UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Rachel Sarich, | : | Case No. 4:04CV0984 |
| | : | |
| Plaintiff | : | |
| | : | Magistrate Judge David S. Perelman |
| v. | : | |
| | : | |
| Bank One Corporation, | : | |
| | : | **MEMORANDUM OPINION** |
| Defendant | : | |

    This action is before this Court upon the motion of defendant, Bank One Corporation ("Bank One"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

    This is an ill-advised case of an employee whose job performance was lackluster at best attempting to convince this Court that she somehow suffered actionable discrimination and retaliation which she claims to have been evidenced by: (1) a single, overheard phone conversation between her boss and an unknown person which she surmised to have been derogatory toward women, (2) another occasion when her boss "snapped at" her causing her to experience hurt feelings, and (3) her ultimate job termination after repeatedly failing to meet job performance goals.  In other words, it is a case which should never have been brought.

    Plaintiff, Ms. Rachel Sarich, brought this action alleging: (1) that she had been terminated from

employment and "replaced due to her age and sex" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e); (2) that in taking those actions her employer denied her right to "equal protection of the law secured by the Fifth and Fourteenth Amendment of the United States Constitution[;]" and (3) that by depriving her of equal protection of the law, the defendant violated 42 U.S.C. §1983.[1]

The plaintiff is a 52-year-old female who was employed by Bank One as an at-will employee on August 11, 1998 in the position of a "Relationship Banker," a salesperson of banking products at the Market Street branch in Youngstown, Ohio.

In plaintiff's first job performance review, conducted on August 6, 1999 by her then supervisor Mr. Jim Feist, she received an overall rating of "3" out of a possible "5," which signified that she met the expectations of her employer, despite her supervisor's handwritten comment that she "need[ed] to improve on her investments and profiling[2] skills." In her deposition, Ms. Sarich agreed with her supervisor's assessment. It was also suggested that Ms. Sarich "obtain Series IV and annuity license," which she completed only in part by obtaining her annuity license later in 1999.

Three months later, seeking better advancement opportunities in a larger branch office, Ms. Sarich transferred to the Eastwood branch in Niles, Ohio, where she would also serve as a Relationship Banker. Her second job performance review was conducted on August 1, 2000 by her supervisor at that time, Mr. Obadiah Hall, who gave her an overall rating of "4," commenting that she needed to improve on her profiling skills. Once again, her sales performance ratings were in the 3's, with the exception of her rating

---

[1] Plaintiff filed an amended complaint withdrawing her claim for relief under §1983.

[2] Profiling is the process by which a salesperson would assess a customer's banking needs and attempt to sell other banking products.

of "4" for "common courtesies." In her handwritten comments plaintiff indicated that she believed her investments would increase upon obtaining her mutual license, which would permit her to sell stocks, bonds and some annuities. However, she never went on to obtain that license.

On February 9, 2001, Ms. Sarich received a written warning documenting a discussion between her and Mr. Hall regarding a mistake she made by failing to count in front of a customer cash he had given to her, causing the bank to lose $200 when the total was short of the designated deposit amount.

On February 26, 2001, Mr. Hall once again reviewed the performance of Ms. Sarich, but this time gave her an overall rating of "3," an assessment she believed to have been fair according to her deposition testimony.

On May 3, 2001, Mr. Hall conducted another review of Ms. Sarich's performance, again giving her an overall rating of "3," with a rating of only "2" indicating that she needed improvement in the category of "Production Goals." Having met only 56% of her goal for deposits and 61% of her goal for loans, Ms. Sarich commented on her review that she "need[ed] to improve on bringing new money into banking center and making sure loans are closed in sufficient time span."

In the performance review dated July 30, 2001, conducted by Mr. Hall, Ms. Sarich received a higher overall rating of "3.5" due to her "great improvement." At the same time however, she had only met 18% of her production goal for deposits.

Ms. Sarich was on an extended sick leave from approximately late October of 2001 until December 14, 2001, for what was ultimately diagnosed to have been a gall bladder problem.

On March 14, 2002, Ms. Sarich received a written warning from Mr. Steve Westenskow, the Youngstown District Manager for Bank One, for having improperly received reimbursement for overdraft

fees assessed upon her checking account and requesting that one of her peers refund overdraft fees while she was on leave of absence, despite the fact that she knew that the peer did not have the authority to do what she had asked.

In that same month, Bank One began to use a system of measuring sales production for each Relationship Banker under which average point value credits ("PVCs") were calculated based upon each Relationship Banker's sales for a particular month. Each Relationship Banker was to average 750 PVCs per month. For that first month Ms. Sarich earned only 531 PVCs, with only one other employee earning less than her, whereas five other employees earned more than 1000 PVCs. Plaintiff failed to meet her goal of attaining at least 750 PVCs for six out of the following eleven months, ending in January of 2003.

In January of 2003, Mr. Bryan Franczkowski was hired as the Branch Manager at the Eastwood Branch, and it is Mr. Franczkowski whom plaintiff alleges discriminated against her.

During January of 2003, Ms. Sarich suffered a serious nosebleed at work, and when the bleeding would not subside emergency medical help was summoned. Plaintiff, who had been taking blood thinning medication, suffered nosebleeds on 8 or 9 occasions during the month, with only the first one having been during work hours.

January also marked the beginning of the annual Quick Start Contest, in which all of the Relationship Bankers in plaintiff's region competed against each other for customers' investment dollars. During the three weeks of the campaign plaintiff failed to bring in any investment dollars, the result of which was a written warning prepared by Mr. Franczkowski in February of 2003 detailing her "substandard job performance." Ms. Sarich commented on the corrective action form that she understood that she had not performed her job as expected but planned to meet her goals for the rest of the year. After receiving the

4

written warning, she and Mr. Franczkowski prepared a weekly schedule for her with daily goals.

In February of 2003, as Ms. Sarich sat at her desk approximately 10 feet away from the telephone at which Mr. Franczkowski was having a conversation with an undisclosed person, she allegedly heard him say something along the lines of "I feel like this is a harem, a bad harem." Plaintiff admits that not only did she not know to whom or about whom Mr. Franczkowski spoke, but she could only surmise that in making the comment he was referring to the women who worked at her bank branch. Ms. Sarich reported the comment to the Assistant Branch Manager, Ms. Kay Wilson, who told her that she wanted to think about how she would handle the situation. Mr. Franczkowski denies ever having made the comment.

Ms. Wilson testified upon deposition that she chose not to act upon the complaint in light of the fact that Ms. Sarich "didn't know who [Mr. Franczkowski] was speaking with and she didn't know who he was speaking about," and stated that she had not discussed the comment with anyone. Ms. Sarich admitted during her deposition testimony that she did not know for sure whether anyone had discussed her accusation with Mr. Franczkowski prior to her March 2003 performance review, but thought that he would have at least heard about it through office gossip.

In March of 2003 Mr. Westenskow conducted a performance review of Ms. Sarich for the period covering the previous year. This review form differed from those previously used in that there were only three categories of ratings, including "E" for "exceeds expectations," "M" for "meets expectations," and "N" for "needs improvement." Ms. Sarich's overall rating was "N," having received the "needs improvement" rating in a number of areas including "Banking Center Percent Growth in Net Earnings," "Banking Center Percent Growth in Revenue," "BC-Customer Household Retention," all areas of sales excellence, product knowledge development, and corporate core competencies (for all categories

except that entitled "Ethics, Integrity and Character"). In addition to the review prepared by Mr. Westenskow, Mr. Franczkowski prepared extensive written comments detailing Ms. Sarich's performance problems and suggesting ways in which she could improve. At the request of Mr. Westenskow, after her review Ms. Sarich prepared a document captioned "My Commitment For 2003" in which she detailed her goals for improving her performance in the upcoming year.

Ms. Sarich testified upon deposition that *prior to* her March of 2003 performance review wherein she discussed the "harem" comment alleged to have been made by Mr. Franczkowski, she and Mr. Franczkowski had another unpleasant exchange in which she had questioned him about a new uniform policy being proposed which she perceived as requiring her to wear a short, black skirt, at which point Mr. Franczkowski "snapped" at her and "embarrassed" her in front of co-workers. However, she has inexplicably changed the timeline in her briefing by arguing that this conversation about uniforms occurred *after* the March of 2003 review and was, in her opinion, evidence of retaliatory conduct relating to her "harem" comment allegation.

On April 7, 2003, Ms. Sarich received a final written warning from Mr. Franczkowski based on her failure to meet sales goals since the previous warning. Mr. Franczkowski stated on the form that he and Ms. Sarich had established daily and weekly production goals in order to monitor her performance, and that if her performance did not improve they would be required to meet again to discuss "whether she is a fit for the [Relationship Banker] position."

During her deposition testimony Ms. Sarich acknowledged that the branch failed to meet its performance goals for April, and that those goals were dependent in part on her performance as a Relationship Banker.

6

In a meeting on May 7, 2003, attended by Ms. Sarich, Mr. Westenskow, and Mr. Franczkowski, plaintiff was informed that due to the fact that her job performance continued to be sub-standard she would be given the option of either resigning from employment with Bank One or being terminated. She was given time to contact her son-in-law to discuss the options, and elected to submit a letter of resignation and to receive 30 days of salary. Although she had the right to appeal this employment action to the bank's Human Resources department within 30 days she did not do so.

Two months after the May 7, 2003 meeting in which she resigned so as to avoid termination, Ms. Sarich secured another position as a sales representative for American Title. Then in September of 2003 she was hired by Sky Bank as a personal banker, a job similar to her position at Bank One. She began her work at Sky Bank on October 31, 2003 and testified upon deposition that she "loves" that job.

Approximately two months after plaintiff left Bank One, and after Bank One advertised the position through internal job posting, a younger male was hired to replace Ms. Sarich as Relationship Banker.

On January 5, 2004 Ms. Sarich filed a Charge of Discrimination with the Ohio Civil Rights Commission alleging discrimination based on sex and age, as well as retaliation, offering as support the "harem" comment she attributed to Mr. Franczkowski. That was followed by the filing of this action against Bank One on May 21, 2004.

Defendant claims entitlement to summary judgment for each of the following reasons: (1) plaintiff has failed to submit evidence to create a genuine issue of material fact on the causal connection between the "harem" comment made by Mr. Franczkowski and her termination from employment, so that she could not establish retaliation; (2) even if she had provided such evidence, the defendant provided evidence of a legitimate, non-discriminatory reason for her termination so that there was no genuine issue of material

7

fact on the issue of pretext for discrimination; (3) plaintiff has submitted no evidence that her age was the basis of the decision to terminate her, other than the fact that she believed herself to be the oldest Relationship Banker and that she was replaced by a younger person; (4) plaintiff has failed to provide evidence that her gender was the basis of the decision to terminate her as there is no evidence that male Relationship Bankers were treated more favorably under similar circumstances; and (5) as a private entity, Bank One cannot violate plaintiff's Fifth and Fourteenth Amendment rights.

Plaintiff argues that she has produced evidence to establish at least a genuine issue of material fact as to each of the foregoing arguments raised by defendant. In particular, she argues that the "bad harem" remark, which she reported immediately to the assistant manager and subsequently to the district manager, each of whom failed to investigate further, when coupled with the fact that Mr. Franczkowski "snapped at" and "embarrassed" her in response to her questioning of a proposed uniform policy, caused her to be terminated from employment, all of which satisfied the requirements of a prima facie case of age, sex and retaliatory discrimination. She also asserts that defendant's evidence that her job performance was a legitimate, non-discriminatory business reason for firing her created at least a genuine issue of material fact as to whether the firing was pretextual.

The disposition of a motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides for the granting of such motion only where, "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is the court's function under such a motion to determine whether a genuine issue of material fact exists, as opposed to endeavoring to resolve any such factual issues. Tee-Pak, Inc. v. St. Regis Paper Co.,

8

491 F.2d 1193 (6th Cir. 1974); 6 Moore's Federal Practice 56.15 [1.-0].

It is the initial burden of the moving party to demonstrate the absence of a genuine issue of material fact as to an essential element of the claims brought by the non-moving party. Curto v. Harper Woods, 954 F.2d 1237, 1241 (6th Cir. 1992); Wilson v. Zanesville, 954 F.2d 349, 350-351 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989).

In Street v. J.C. Bradford & Co., supra, the Sixth Circuit Court of Appeals reviewed three then recent decisions of the United States Supreme Court addressing summary judgment practice, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).[3] The court summarized those cases as standing for a number of new principles in summary judgment practice, including the fact that cases involving considerations of state of mind issues (such as discriminatory action) are not automatically inappropriate for summary judgment; that a federal directed verdict standard ("whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law") should be applied to summary judgment motions; that a non-moving party must provide "more than a mere scintilla of evidence" to avoid summary judgment; that the substantive law applicable to the cause of action will govern the materiality of the issues of fact; that the court has no duty to search the record to determine the existence of genuine issues of material fact; and perhaps most significant, that a trial court has more discretion than it would have in the past in weighing the evidence offered by the non-moving party, considered in light of the whole record, to determine whether

---

[3]The court's reference to those rulings as representing a "new era" of "dramatic change" may no longer hold true nine years later, but the characterization of their import as to motions for summary judgment being viewed with "more favorable regard" certainly remains true.

9

that party's evidence does "more than simply show that there is some metaphysical doubt as to the material facts" or whether it demonstrates that the non-moving party's claims are "implausible." Id. at 1479-1480 (Footnotes and citations omitted.)

The seminal case on employment discrimination is McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), wherein the United States Supreme Court delineated a four part formula by which plaintiff can establish a prima facie case by showing, that he/she (1) was a member of a protected class, (2) was qualified for the position and performed it satisfactorily, (3) was discharged or suffered an adverse employment action, and (4) either that his/her position was filled by a non-member of the protected class or that he/she was treated less favorably than similarly-situated individuals. Id. at 802; see also, Johnson v. University of Cincinnati, 215 F.3d 561, 572-74 (6th Cir.), cert. denied, 121 S.Ct. 657 (2000); Allen v. Ohio Department of Rehabilitation and Correction, 128 F.Supp. 2d 483 (S.D.Ohio 2001). This test is also used by the Ohio courts when faced with alleged violations of Ohio's anti-discrimination statutes. Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992). Accord, Fenton v. HiSan, Inc., 174 F.3d 827, 829 (6th Cir. 1999).

The McDonnell Douglas Title VII evidentiary formula for establishing a prima facie case applies with equal force to employment discrimination claims brought under 42 U.S.C. §1981. Mitchell v. Toledo Hospital, supra. It follows that failure to establish a prima facie case under Title VII would also preclude a finding of discrimination under §1981.

Strict adherence to the McDonnell Douglas formula is not required when there is direct evidence of discriminatory intent on the part of the defendant. Shah v. General Elec. Co., 816 F.2d 264 (6th Cir. 1987) (plaintiff established prima facie case of discrimination even though she was not replaced after her

discharge where she presented other evidence of discriminatory motive); Mills v. Ford Motor Co., 800 F.2d 635, 639 (6th Cir. 1986) ("All the plaintiff must establish at the prima facie stage is that her discharge raised an inference of discrimination"); Duchon v. Cajon Co., 791 F.2d 43 (6th Cir. 1986) (female plaintiff established prima facie case when she showed that she was discharged for engaging in an affair with a man in the office who was not likewise discharged).

A claim of age discrimination under the ADEA requires proof of discriminatory motive and cannot survive if there is no evidence that the employment action taken was intended to treat a substantially younger employee more favorably than plaintiff. Woythal v. Tex-Tenn Corp., 112 F.3d 243, 246-47 (6th Cir. 1997). Accord, Leonard v. Twin Towers, unreported, Case No. 99-4221, 2001 U.S.App. LEXIS (6th Cir. 2001). The prima facie case parallels McDonnell Douglas, with the plaintiff being required to produce evidence that a substantially younger individual, not a member of the protected class, was treated more favorably as regards a particular employment action. Ibid.

In the present case plaintiff does not distinguish between direct and circumstantial evidence of discrimination, but this Court has found no direct evidence offered by plaintiff, so that in order for the plaintiff to succeed there would need to be proof from which a factfinder could infer an invidious intent to discriminate with regard to the challenged employment actions.

When a prima facie showing of discrimination is made there is a rebuttable presumption that the employer has engaged in impermissible discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). At that point the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. McDonnell Douglas, 411 U.S. at 802; Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1214 (6th Cir. 1996).

11

Stated differently, that presumption may be rebutted by the production of evidence that "the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1982 (6th Cir. 1994) (quoting Texas Dep't of Community Affairs v. Burdine, supra at 254). Once the employer has met the foregoing burden of production the presumption of discriminatory animus is no longer in effect.

If there is negation of the presumption of discriminatory animus the factfinder is back to square one, and must determine whether the challenged employment action was motivated by discriminatory animus, taking into consideration all evidence of record, including any evidence indicating that the reason articulated by the employer for the action was pretextual. A plaintiff may accomplish this either by showing that the proffered reason is unworthy of belief, or that the true reason for the his/her rejection, notwithstanding the proffered reason, was of a discriminatory nature. Goostree v. Tennessee, 796 F.2d 854 (6th Cir. 1986), cert. denied, 480 U.S. 918 (1987).

> "Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1982 (6th Cir. 1994) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). In order to challenge the credibility of an employer's explanation, the plaintiff must show by a preponderance of the evidence: (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the adverse employment action; or (3) the proffered reasons were insufficient to motivate the adverse employment action. See Manzer, 29 F.3d at 1084 (quoting McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993)).

E.E.O.C. v. Yenkin-Majestic Paint Corp., 112 F.3d 831, 834 (6th Cir. 1997). The plaintiff always retains the ultimate burden of persuasion. Ibid, citing Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987).

12

When the foregoing issues are raised upon motion for summary judgment the following applies:

> In the context of a summary judgment proceeding, [St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)] requires that, once the employer has advanced a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on [discrimination]. . ." Direct or indirect evidence of discriminatory motive may do but 'the evidence as a whole. . .must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by [discriminatory] animus.'". . .Thus, the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer.

LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). (Citations and footnotes omitted.)  Accord, Manzer v. Diamond Shamrock Chemicals Co., supra at 1083, n.3.

Although disbelief of the employer's proffered reason for employment actions together with the facts making up the prima facie case may suffice to show discrimination, "nothing in law would permit [a court] to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 514-15 (1993).

Turning to the present case, there is no dispute that Ms. Sarich has satisfied the first, third and fourth elements of a prima facie case of sex and age employment discrimination in that as a female over the age of 40 she is clearly a member of a protected class and she was terminated from employment with Bank One, after which she was replaced by a younger, male employee.

As regards the second element of a prima facie case of employment discrimination, being that she

13

was qualified for the position and performed it satisfactorily, plaintiff has not met her burden.

The plaintiff argues that any dissatisfaction with her job performance was not based in fact but was fabricated by Mr. Franczkowski, as it was only upon the arrival of Mr. Franczkowski in January of 2003 that she began to receive less than satisfactory performance ratings from her supervisors, an argument which is unpersuasive for each of several reasons, particularly the fact that her sub-standard job performance was identified by supervisors before Mr. Franczkowski and continued once he came on board.

Plaintiff's job performance review for her work in 2002 was prepared by Mr. Westenskow,[4] not Mr. Franczkowski, and she received an overall rating of "Needs Improvement" after having received that same rating in a number of subcategories. Indeed, when deposed Ms. Sarich admitted that she did not meet her 2002 performance goals for work completed *prior to* the arrival of Mr. Franczkowski as her supervisor.

In fact, early as 1999 Ms. Sarich's reviews set performance goals which were never met (i.e., obtaining her Series IV license). In the August 2000 performance review in which she received sales performance ratings of "3" out of a possible "5," the plaintiff expressed her belief that the amount of investments she brought in to the bank would increase if she earned her mutual license, but she never did so. By early 2001 her overall rating dropped from a "4" to a "3." Several months later her performance had not improved, as she again received an overall rating of "3," with a rating of "2" indicating that she

---

[4] It was also Mr. Westenskow who issued plaintiff a written warning in March of 2002 for improperly receiving reimbursement for overdraft fees and for trying to persuade one of her peers to refund additional fees while she was on leave.

14

needed improvement in the category of "Production Goals," due to the fact that she met only 56% of her goal for deposits and 61% of her goal for loans. Despite Mr. Hall's July of 2001 assessment that plaintiff had improved, she had only reached 18% of her production goal for deposits.

With the advent of Bank One's new PVC program in March of 2002 Ms. Sarich's performance problems manifested in her failing to meet that goal for 6 of the 11 months ending in January of 2003, when Mr. Franczkowski began as her supervisor. That failure, along with her failure to bring in *any* investment dollars during the Quick Start Campaign in January of 2003, which caused Mr. Franczkowski to issue a written warning to Ms. Sarich regarding her poor performance, marked the beginning of their ill-fated employment relationship.

In conjunction with his warning to Ms. Sarich regarding her job performance, Mr. Franczkowski prepared a weekly schedule with goals for Ms. Sarich, reflecting his expectations for her. Ms. Sarich prepared a summary of goals for herself for the upcoming year in conjunction with her review by Mr. Westenskow in March of 2003. Yet despite the explicit nature of the job performance goals she failed to meet them, and was issued a final written warning detailing that failure in April of 2003, at which point she and Mr. Franczkowski again established daily and weekly production goals for her which she failed to meet, resulting in the May 7, 2003 meeting in which she was given the opportunity to resign or to be terminated due to her poor performance.

The foregoing evidence clearly documents weak job performance on the part of Ms. Sarich beginning prior to Mr. Franczkowski's supervision of her, and continuing decline in her performance under his supervision. As such, plaintiff has failed to meet her burden with regard to the third element of a prima facie case of employment discrimination.

15

Having failed to satisfy all of the elements of a prima facie case, summary judgment is warranted on plaintiff's claims of employment discrimination based upon gender and age.

If there had been an issue of material fact as to a prima facie case, Bank One has unquestionably provided evidence of legitimate, nondiscriminatory reasons for the adverse employment actions taken against plaintiff, i.e., that she was failing to perform her job satisfactorily, which was previously outlined in addressing the third element of a prima facie case of employment discrimination.

Ms. Sarich's attempt to convince this Court that such legitimate, nondiscriminatory reason for the employment action taken against her was pretextual is unpersuasive.

Plaintiff relies on a document captioned "Average PVCs per Relationship Banker as of January 2003" as evidencing that she ranked among the top ten of twenty-four Relationship Bankers in average point value credits per month. However, she neglects to mention that only twelve of the twenty-four Relationship Bankers represented on the chart were employed for the full eleven month period covered by the chart and that eight of the twenty-four were employed as Relationship Bankers for six months or less, whereas she had been a Relationship Banker since 1998. For three months detailed on the chart Ms. Sarich was in the bottom three performers and for 6 of the 11 months she failed to meet the goal of 750 PVCs per month. Clearly, this chart does not suggest pretext.

Ms. Sarich also relies on an affidavit of Ms. Nakia Burch, a customer service assistant reassigned as a teller in early 2003, as supporting her claim that the reason for her termination articulated by Bank One was pretextual. Ms. Burch stated that it was her opinion that Ms. Sarich performed her job satisfactorily until Mr. Franczkowski became her supervisor. Ignoring the fact that this is pure opinion, this Court finds that it has no evidentiary value as Ms. Burch did not supervise Ms. Sarich, was not a Relationship Banker,

16

did not have access to her personnel files, and was not present during the various meetings where performance goals were detailed for Ms. Sarich. Furthermore, even if it was true that Ms. Sarich only began to receive less than satisfactory job performance reviews under the supervision of Mr Franczkowski, that fact could evidence nothing more than that he demanded higher quality work, or that the PVC monthly quota system made Ms. Sarich's performance problems more obvious.[5]

Plaintiff having failed to satisfy her burden of providing convincing evidence of pretext, even if there had been sufficient evidence to establish a prima facie case, summary judgment is warranted on plaintiff's claims of employment discrimination based upon gender and age.

The same is true of plaintiff's claim of retaliatory discharge.

The purpose of Title VII's anti-retaliation provision is to protect employees from adverse action as a result of opposing that which is made unlawful by other sections of Title VII. In reviewing a retaliation claim courts apply the McDonnell-Douglas analysis. Wrenn v. Gould, 808 F.2d 493 (6th Cir. 1987). Under that mode of analysis a plaintiff bears the burden of showing that he/she engaged in an activity protected by Title VII and that his/her employer was aware of it, that he/she was subject to an adverse employment action, and that there is a causal connection between the protected activity and the adverse action. Nguyen v. City of Cleveland, 229 F.3d 559, 563-64 (6th Cir. 2000); Johnson v. U.S. Dept. of Health and Human Services, 30 F.3d 45,47 (6th Cir. 1997).

If a plaintiff satisfies the foregoing burden of production, the burden then shifts to the defendant to

---

[5]Ms. Sarich also relies on Ms. Burch's averment regarding a statement made to her by Ms. Kay Wilson, in which Ms. Wilson purportedly said that Ms. Sarich was terminated because she was the highest paid employee at that branch. Such constitutes inadmissible hearsay under Rule 802 of the Federal Rules of Evidence, and for that reason cannot be considered, but if it was to be considered would not bear upon the plaintiff's claims of sex and/or age discrimination.

provide a legitimate, non-discriminatory reason for its actions. Texas Dep't of Community Affairs v. Burdine, supra. Having done so, the burden then shifts back to the plaintiff to show that the protected activity was a "significant factor" in the discharge, meaning that it was one of the reasons for the discharge. Wrenn v. Gould, supra.

Bank One argues, and this Court finds, that Ms. Sarich has failed to produce evidence of a causal connection between reporting her displeasure with the "harem" comment alleged to have been made by Mr. Franczkowski and her termination.

According to the plaintiff, immediately after she informed Ms. Wilson that she was "deeply offended" by Mr. Franczkowski's "harem" comment, her employment relationship with Mr. Franczkowski worsened and ultimately led to her termination.

Plaintiff's theory fails, however, in light of the following evidence: (1) Ms. Sarich's job performance problems had been clearly identified *before* Mr. Franczkowski became her supervisor; (2) she had already received a written warning from Mr. Franczkowski regarding poor work performance; and (3) Ms. Wilson did not inform Mr. Franczkowski, or anyone else, of Ms. Sarich's complaint in light of the fact that Ms. Sarich "didn't know who [Mr. Franczkowski] was speaking with and she didn't know who he was speaking about."

Mr. Franczkowski denies having been aware of Ms. Sarich's complaint prior to her March of 2003 performance review. Ms. Sarich admitted during her deposition testimony that she did not know whether anyone had discussed her accusation with Mr. Franczkowski prior to her March 2003 performance review, but only thought that he would have at least heard about it through office gossip, although there is no evidence that any employee spoke of Ms. Sarich's complaint either directly to Mr. Franczkowski or in his

18

presence. Absent that, there is no evidence that plaintiff's complaint to Ms. Wilson influenced the March of 2003 performance review conducted by Mr. Westerskow, in which Ms. Sarich was told that her overall performance needed improvement and to which Mr. Franczkowski came with lengthy notes as to plaintiff's problem areas. She testified that after the March of 2003 performance review during which she discussed Mr. Franczkowski's "harem" comment, she had no more problems with him making embarrassing or offensive comments.

Ms. Sarich also testified upon deposition[6] that prior to that March of 2003 performance review, but after the "harem" comment, Mr. Franczkowski "snapped at" and "embarrassed" her in front of co-workers when she questioned him about the proposed uniform policy, and that somehow this incident also evidenced her exercise of a protected activity which ultimately led to her termination. In so arguing, plaintiff offers nothing more than her own self-serving statements about how she perceived these comments, without any indication of what was said or how those statements were causally linked to her adverse employment action, particularly since she also testified that there were no more offensive comments once she spoke up in the March 2003 performance review.

There being no evidence supporting a prima facie case of retaliation, summary judgment is warranted on that basis.

If plaintiff had provided sufficient evidence of a prima facie case of retaliation, as was set forth previously herein Bank One has met its burden of providing evidence of a legitimate business reason for its decision to terminate Ms. Sarich and plaintiff has failed to meet her burden of providing evidence of

---

[6] Plaintiff's deposition testimony was clear as to the timing of those events, which undermines her attorney's arguments to the contrary in her brief in opposition.

pretext.  As a consequence, defendant is entitled to summary judgment on this issue.

Finally, this Court agrees with Bank One that plaintiff's claims brought under the Fifth and Fourteenth Amendments to the United States Constitution must fail in light of the fact that only a governmental entity, and not a private employer such as Bank One, may violate an individual's rights to equal protection under those provisions.  <u>Regents of University of California v. Bakke</u>, 438 U.S. 265 (1978).  Plaintiff has also failed to address these claims for relief in her brief in opposition to defendant's motion for summary judgment, which indicates abandonment of them.  It follows that summary judgment is warranted on these claims for relief.

In light of all the foregoing, this Court is of the opinion that there are no genuine issues of material fact on the claims raised by plaintiff and that defendant is entitled to judgment as a matter of law.

s/DAVID S. PERELMAN  
United States Magistrate Judge

DATE:    September 2, 2005